UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
CHUKWUMA E. OSUJI,

                Appellant,

- against -

STELLA AZIE,

                Appellee.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-1365 (PKC)

PAMELA K. CHEN, United States District Judge:

Appellant Chukwuma E. Osuji appeals a judgment of the United States Bankruptcy Court for the Eastern District of New York, Chief Judge Carla E. Craig presiding, denying him a discharge, and granting summary judgment in favor of Appellee Stella Azie, pursuant to 11 U.S.C. §§ 727(a)(3) and (a)(5). For the reasons set forth below, the judgment of the Bankruptcy Court is affirmed.

## BACKGROUND[1]

On November 16, 2018, Appellant Osuji filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. (Bankruptcy Petition ("Pet."), R. 19-7.) The trustee, finding that Osuji had no available property or assets to distribute, issued a Report of No Distribution. (R. 19-4.) Subsequently, on February 19, 2019, Appellee Azie—a creditor who had lent Osuji money and obtained a judgment of $231,800 against Osuji—brought an adversary proceeding under 11 U.S.C. § 727 objecting to Osuji's discharge. (*See generally* Adversary Complaint ("Compl."), R. 1.) As

---

[1] The following background is drawn from the record before the Bankruptcy Court (Case No. 19-AP-1021) and the parties' submissions here. Citations to the Bankruptcy Court record are denoted using the abbreviation "R." Citations to documents filed with this Court are denoted using the abbreviation "Dkt."

1

relevant here, Azie claimed that Osuji should be denied a discharge under § 727(a)(3) for unjustifiably failing to keep or preserve financial records, as well as under § 727(a)(5) for failing to satisfactorily account for the loss of the money lent to him by Azie. (*Id.* ¶¶ 23–29.) Azie moved for summary judgment on these, and other, grounds. (*See* Motion for Summary Judgment ("MSJ"), R. 19-1, ¶¶ 26–34.) Azie's motion highlighted that Osuji had provided no books or records with respect to his prior business dealings, including no bank statements and no business tax returns. (*Id.* ¶¶ 25, 30.)

In opposing the motion for summary judgment, Osuji attempted to justify his lack of financial records and explain his loss of assets. Osuji admitted that prior to his bankruptcy filing he had owned two businesses—a Subway franchise and a shipping company that exported engine parts to Nigeria—both of which had failed. (*See* Opposition to MSJ ("MSJ Opp."), R. 21, at PDF[2] 7, 14.) According to Osuji, his warehouses in Nigeria "were all vandalized during [the] Niger Delta uprising," and he "lost [his] wares and [his] business."[3] (Appellant's Affidavit ("Aff."), R. 22, ¶ 9.) Along with an affidavit, Osuji submitted an article discussing militant activity in the Niger River Delta generally, and several photographs purportedly showing where Osuji's

---

[2] Because many of Osuji's filings in the Bankruptcy Court do not contain internal page or paragraph numbers, the Court uses "PDF" to refer to the pagination generated by the PDF documents themselves.

[3] Curiously, at a "341" meeting of creditors on December 19, 2018, following the filing of his bankruptcy petition, Osuji told the trustee under oath that he "never owned any properties in Nigeria." (Transcript of 341 Meeting ("341 Tr."), R. 19-3, at 28:2.) A "341" meeting refers to the meeting of the debtor and debtor's creditors required by Section 341 of the Bankruptcy Code at which the trustee questions the debtor to ensure that the debtor understands the nature and consequences of filing for bankruptcy. *See* 11 U.S.C. § 341; *see also Kramer ex rel. Estate of Shahara Khan v. Mahia* (*In re Khan*), No. 10-46901 (ESS), 2014 WL 10474969, at *60 (E.D.N.Y. Dec. 24, 2014) ("The Section 341 meeting of creditors is a cornerstone of the Chapter 7 process. It is an essential tool for the Trustee and any creditor or party in interest to develop an understanding of a debtor's bankruptcy case.").

warehouses had been bombed. (R. 23-3, at PDF 1–7.) Additionally, Osuji explained in his affidavit that Hurricane Sandy in 2012 "caused havoc" to his house, "damaging much of [his] photographs and documents," and that he "started seeing [n]eurologists" afterwards. (Aff., R. 22, ¶ 6.) Later, during one of his trips to Nigeria to take care of his mother, Osuji "took ill and could not come back to New York" for several years. (*Id.* ¶¶ 6, 8.) While Osuji was in Nigeria, his Subway franchise store was repossessed and sold; Osuji was denied "access to [his] documents [relating to the Subway store] when [he] asked for them." (*Id.* ¶ 8.) To substantiate these assertions, Osuji submitted some emails with Subway's legal department, which reference "personal properties and monies" that Osuji kept in the store, in addition to "equipments [*sic*], tools, documents, [and] shelves." (R. 23-3, at PDF 8–11.) Osuji also submitted medical letters indicating that he underwent a neurological examination in September 2011 (before Hurricane Sandy), was "managed for neurological disorder" at a medical center in Nigeria in 2014, was treated for a relapse of neurological problems at the same center in Nigeria in January 2019 (after he had filed for bankruptcy protection), and as of January 2020 was "on regular follow-up on [an] outpatient basis" at the Nigerian medical center. (R. 23-1, at PDF 1–3.)

On February 11, 2020, the Bankruptcy Court held a hearing on Azie's motion for summary judgment and ruled from the bench, granting the motion and denying Osuji a discharge pursuant to §§ 727(a)(3) and (a)(5). To start, the Bankruptcy Court concluded that Azie had adequately demonstrated Osuji's failure to keep or preserve records under § 727(a)(3), finding that there had been "no documentation, basically, of anything . . . [a]nd no business records from the businesses." (MSJ Hearing Transcript ("MSJ Hr'g Tr."), Dkt. 6-1, at 20:4–9.) The Bankruptcy Court highlighted the dearth of bank statements and business tax returns. (*See id.* at 7:2–6, 8:2–3, 12:25–13:25, 18:10–11, 23:24–24:3.) Additionally, in a similar vein, the Bankruptcy Court determined

that Osuji had "failed to explain satisfactorily any loss of assets or deficiency of assets" under § 727(a)(5), given the lack of documentation of any kind, including even bank statements, with respect to his two businesses. (*Id.* at 7:18–8:3.) Indeed, according to the Bankruptcy Court, this was "a situation where the debtor has absolutely nothing to show for his life, for his economic or his financial life, for the past—well, forever, for any period of time. He has nothing to show for anything, other than two [personal] tax returns, which show zero." (*Id.* at 8:9–13.)

The Bankruptcy Court also rejected Osuji's attempted justifications and explanations. First, the Bankruptcy Court dismissed the purported pictures of Osuji's destroyed warehouses in Nigeria, finding that the photographs showed "nothing" and "could have been taken in a junkyard somewhere." (*Id.* at 12:14–17.) In any event, according to the Bankruptcy Court, the alleged destruction of the warehouses did not justify or explain the lack of basic records, such as bank statements and tax returns for the business. (*Id.* at 12:25–13:4.) Second, the Bankruptcy Court rejected Osuji's explanation that he could not produce records because Hurricane Sandy flooded his home and his Subway store was repossessed and sold while he was in Nigeria. (*Id.* at 13:5–18, 17:2–18:11, 21:17–22:13.) In particular, the Bankruptcy Court found it unbelievable that, even given the circumstances, Osuji could not produce any bank records or tax returns for either of his businesses. (*See id.* at 13:13–18, 18:10–11, 22:4–13.) When Osuji's counsel represented that Osuji had tried to get bank statements but was unsuccessful, the Bankruptcy Court flatly stated, "I don't believe you. . . . I don't believe that the bank statements become—I think the customer can get copies of the bank statements. So I think this—I'm not finding any adequate explanation." (*Id.* at 14:1–9.) Finally, the Bankruptcy Court rejected Osuji's explanation that his neurological issues were to blame, finding that Osuji's "different outpatient appointments over a period of time" did not adequately justify or explain the lack of records or loss of assets. (*See id.* at 15:1–14.)

4

Overall, the Bankruptcy Court concluded that Osuji's story "absolutely [did] not add up" (*id.* at 16:3) and that Osuji had provided "nothing . . . that sound[ed] like a justification" (*id.* at 16:20–21). The Bankruptcy Court denied Osuji a discharge (*id.* at 24:8–9) and entered judgment on February 27, 2020 (R. 26). Osuji filed a timely notice of appeal on March 11, 2020. (R. 27.)

On appeal, Appellant Osuji maintains that he adequately explained and justified his lack of financial documents and loss of assets below, and that these justifications and explanations are supported by the record. (*See generally* Appellant's Brief ("Appellant Br."), Dkt. 6.) Appellant essentially reiterates the same justifications and explanations presented to—and rejected by—the Bankruptcy Court. (*See id.* at 1–5.)

## DISCUSSION

### I. Standard of Review

"District courts have appellate jurisdiction over 'final judgments, orders, and decrees' entered in bankruptcy court." *Satti v. Nechadim Corp.*, No. 17-CV-683 (MKB), 2018 WL 1010206, at *3 (E.D.N.Y. Feb. 16, 2018) (quoting 28 U.S.C. § 158(a)). The district court exercises *de novo* review over legal conclusions, but reviews factual findings only for clear error. *Lubow Mach. Co. v. Bayshore Wire Prods. Corp.* (*In re Bayshore Wire Prods. Corp.*), 209 F.3d 100, 103 (2d Cir. 2000). The clear-error standard means that the reviewing court does not reweigh the evidence; rather, a factual finding is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *See Bordonaro v. Fido's Fences, Inc.*, 565 B.R. 222, 230 (E.D.N.Y. 2017) (quoting *Dist. Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers v. United Techs. Corp.*, 610 F.3d 44,51 (2d Cir. 2010)). Findings based on credibility determinations "are entitled to 'particularly strong deference.'" *In re Persaud*, 496 B.R. 667, 678 (E.D.N.Y. 2013) (quoting *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 64 (2d Cir. 1992)); *see also Pisculli v. T.S. Haulers, Inc.* (*In re Pisculli*),

5

426 B.R. 52, 59 (E.D.N.Y. 2010) ("Particularly strong deference must be given a bankruptcy court's findings of fact based on credibility assessments of witnesses it has heard testify." (alterations omitted) (quoting *Republic Credit Corp. I v. Boyer* (*In re Boyer*), 328 F. App'x 711, 716 (2d Cir. 2009) (summary order))). "Mixed questions of fact and law are subject to *de novo* review." *Babitt v. Vebeliunas* (*In re Vebeliunas*), 332 F.3d 85, 90 (2d Cir. 2003) (citing *FDIC v. Providence Coll.*, 115 F.3d 136, 140 (2d Cir. 1997)).

**II.    Analysis**

Appellant Osuji contends that the Bankruptcy Court erred in granting summary judgment in favor of Appellee Azie and denying him a discharge. (*See generally* Appellant Br., Dkt. 6.) In bankruptcy adversary proceedings such as this one, the standard for summary judgment is the same as in any federal civil action. *See* Fed. R. Bankr. P. 7056; *see also Berger & Assocs. Attorneys, P.C. v. Kran* (*In re Kran*), 760 F.3d 206, 209 (2d Cir. 2014). Accordingly, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A grant of summary judgment is reviewed de novo, construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor." *Burns v. Martuscello*, 890 F.3d 77, 83 (2d Cir. 2018) (quoting *Kazolias v. IBEWLU 363*, 806 F.3d 45, 49 (2d Cir. 2015)). In other words, once the reviewing court resolves all ambiguities and draws all reasonable inferences in favor of the nonmoving party, whether there is a "genuine dispute as to any material fact" and whether "the movant is entitled to judgment as a matter of law" are legal issues subject to *de novo* review. *Cf. Franco v. Gunsalus*, 972 F.3d 170, 175 (2d Cir. 2020) (characterizing the issue of whether "a genuine dispute of material fact existed" as "a matter of law").

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alteration in original) (internal quotation and citation omitted). Moreover, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (citation omitted). Thus, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

As discussed below, the Bankruptcy Court properly granted summary judgment in Appellee Azie's favor, because even accepting Appellant Osuji's purported justifications and explanations as credible and true, Appellee was entitled to judgment as a matter of law under 11 U.S.C. §§ 727(a)(3) and (a)(5).

    **A.**    **Section 727(a)(3)**

"One of the central purposes of the Bankruptcy Code and the privilege of discharge is to allow the 'honest but unfortunate debtor' to begin a new life free from debt." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006) (quoting *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991)). To protect creditors, however, Section 727 of the Bankruptcy Code permits the bankruptcy court to deny discharge under certain circumstances, as specified in 11 U.S.C. § 727(a). *Id.* Because the provisions of § 727(a) "impos[e] an extreme penalty," they "must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *Id.* (internal quotation marks and citation omitted).

7

> Section 727(a)(3) in particular requires the denial of discharge if
>
> > the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3). The creditor, here Azie, has the "initial burden . . . to show that the debtor [Osuji] failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." *Cacioli*, 463 F.3d at 235 (citation omitted). Once the creditor fulfills the initial burden of showing an absence of records, "the burden falls upon the bankrupt to satisfy the court that his failure to produce [the records] was justified." *Id.* (citations omitted).

Here, Osuji does not challenge the Bankruptcy Court's conclusion that Azie met her initial burden of showing an absence of records, given the complete lack of "documentation" and "business records from the businesses" (MSJ Hr'g Tr., Dkt. 6-1, at 20:4–9). (*See generally* Appellant's Br., Dkt. 6; Appellant's Reply ("Reply"), Dkt. 10.) Rather, Osuji argues that the Bankruptcy Court erred in determining on summary judgment that Osuji had failed to provide adequate justification for the lack of records. (*See* Appellant's Br., Dkt. 6, at 1 ("Mr. Osuji maintains that the record adequately supports his explanation why he could not produce the requested documentation."); *id.* at 5 ("Mr. Osuji maintains that he had adequately explained the above circumstances. At the least, it should be left for a fact-finder to consider."); Reply, Dkt. 10, at 4 ("The record supports that Mr. Osuji fully explained his circumstances.").)[4]

---

[4] Somewhat confusingly, Osuji's reply brief asserts, without any citation to the record, that Appellant "submitted tax papers for both [of his former] companies from 2012 to 2018 to the trustees of the court and to opposing counsel." (Reply, Dkt. 10, at 3.) Given the lack of any record citation, and based on the Court's review of the record, there appears to be no basis for this statement. The Court certainly is not "left with the definite and firm conviction" that the Bankruptcy Court mistakenly found that there was a complete lack of business tax returns and

8

"[W]hether a debtor's failure to keep books is justified is 'a question in each instance of reasonableness in the particular circumstances.'" *Cacioli*, 463 F.3d at 235 (quoting *In re Underhill*, 82 F.2d 258, 259–60 (2d Cir. 1936)). This reasonableness test includes inquiry into several factors "to the extent that the factors are relevant to the debtor's stated justification." *Id.* at 237 (citations omitted). These factors are:

> [1] the education, experience, and sophistication of the debtor; [2] the volume of the debtor's business; [3] the complexity of the debtor's business; [4] the amount of credit extended to debtor in his business; and [5] any other circumstances that should be considered in the interest of justice.

*Id.* (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1231 (3d Cir. 1992)). The overarching question is "what a normal, reasonable person would do under similar circumstances." *Id.* at 235 (quoting *Meridian Bank*, 958 F.2d at 1231).

Here, Appellant Osuji's asserted justifications for providing no books and records for his prior businesses, and only two personal income tax returns that both showed just zeros, are that militant activity in Nigeria destroyed his shipping business and warehouses, Hurricane Sandy ruined the documents and records that he kept in his home office, he has been suffering from neurological issues, and while he was in Nigeria for an extended period of time, he lost his Subway

---

bank statements, and therefore, that finding is not clearly erroneous. *See Bordonaro*, 565 B.R. at 230 (quoting *Dist. Lodge 26*, 610 F.3d at 51). The Court also does not construe Appellant's assertion as a challenge to the Bankruptcy Court's legal conclusion under § 727(a)(3) that there are insufficient records from which Appellant's financial condition or business transactions might be ascertained. However, to the extent that Appellant raises such a challenge, it is without merit. *See, e.g.*, *Jaroslawicz v. Steinberg* (*In re Steinberg*), No. 16-CV-4074 (LGS), 2017 WL 1184314, at *8 (S.D.N.Y. Mar. 29, 2017) (vacating in part the bankruptcy court's decision, because eight years of personal joint tax returns, personal banking and credit card statements, and bank statements regarding the debtor's business were insufficient to disclose material business transactions); *State Bank of India v. Sethi* (*In re Sethi*), 250 B.R. 831, 839 (Bankr. E.D.N.Y. 2000) (determining that several years of federal tax returns and one year's W-2 form were "wholly insufficient for the Trustee or a creditor to ascertain the debtor's financial condition or pre-petition business transactions").

franchise store and the records that were allegedly kept in the store. (*See* Appellant's Br., Dkt. 6, at 4, 6–13.) Even accepting these assertions as true, the Court agrees with the Bankruptcy Court that they do not reasonably justify Appellant's failure to provide *any* financial records with respect to his businesses, including even bank statements and tax returns. Although not all of the factors that the Second Circuit laid out in *Cacioli* are relevant here, the Bankruptcy Court found that, with respect to the complexity of the debtor's business, Appellant "was engaged in at least two businesses of some complexity: running . . . a restaurant franchise and an import-export business involving engine parts." (MSJ Hr'g Tr., Dkt. 6-1, at 21:9–12.) Additionally, regarding the amount of credit extended, the Bankruptcy Court found that Appellant's obligations included a business loan of "about 250,000 dollars," *i.e.*, approximately the amount of Appellee Azie's claim against Appellant. (*See id.* at 21:13–15.) Such businesses, as the Bankruptcy Court concluded, would "have bank records" and would "have a tax return, for sure." (*Id.* at 22:18–21.) The Court agrees. The Court also agrees that Appellant's various justifications—militant uprisings, hurricanes, repossession of his franchise store, and neurological issues—do not reasonably excuse a failure to provide such basic financial documents as bank statements and tax returns. As the Bankruptcy Court sensibly reasoned:

> [P]resumably [Appellant Osuji] had some Nigerian bank records when he was operating his import-export business in Nigeria. He would have had to file tax returns for those businesses here and in Nigeria. He didn't provide any tax returns for the Subway franchise, which [] he certainly could have gotten from the IRS. And if he was—and if he was operating a business exporting and importing, he would have had to file those tax returns here and [in] Nigeria, probably. He didn't produce any of those.[5]

(*Id.* at 22:5–13.) Even if several years have passed since the collapse of Appellant's businesses, there is no indication in the record that Appellant ever actually attempted to obtain bank statements

---

[5] The Court further notes that given the relative complexity of Appellant's businesses, it would be expected that he used a tax preparer service or accountant to prepare his tax returns or

10

and tax returns, but was unsuccessful in doing so. Thus, even accepting as true the various unfortunate circumstances asserted by Appellant in their totality, the Court concludes that a reasonable person would not, as Appellant did, provide zero bank statements and business tax returns, without showing even a single attempt to obtain them. In other words, as the Bankruptcy Court found, Appellant's account, even if true, simply "does not add up." (*Id.* at 16:3.)

Appellant Osuji argues that the Bankruptcy Court erred because the record supports each of his stated justifications. (*See* Appellant's Br., Dkt. 6, at 6–13.) In other words, Appellant contends that the Bankruptcy Court erred because there are genuine disputes of material fact, which the Bankruptcy Court overlooked because it "just did not believe any of [Appellant's] explanations." (*See* Reply, Dkt. 10, at 3, 4–8.) This argument misses the mark. The Court shares much of the Bankruptcy Court's skepticism regarding the veracity of Appellant's account.[6] But in any event, as just explained, there is no logical or reasonable connection between Appellant's various stated circumstances and his inability to provide even basic financial records, such as bank statements and tax returns. Therefore, Appellant's story, even if true, does not reasonably excuse

---

other business filings, and that those individuals or entities would have copies of Appellant's business or tax records.

[6] In particular, the Court agrees with the Bankruptcy Court that the photographs purporting to depict Appellant Osuji's destroyed warehouses in Nigeria show "nothing" and "could have been taken in a junkyard somewhere." (MSJ Hr'g Tr., Dkt. 6-1, at 12:14–17.) The Court also notes that at the 341 meeting with the bankruptcy trustee and creditors, Appellant told the trustee under oath that he "never owned any properties in Nigeria." *See supra* note 3 (quoting 341 Tr., R. 19-3, at 28:2). Additionally, the records both here on appeal and before the Bankruptcy Court are inconsistent regarding the extent to which Osuji's house was flooded during Hurricane Sandy—sometimes indicating that the house was flooded by "eight feet" of water (Appellant's Br., Dkt. 6, at 2; MSJ Hr'g Tr., Dkt. 6-1, at 17:4), and at other times indicating that there was only "eight inches" of water (Statement of Issues, Dkt. 5, at 1; MSJ Hr'g Tr., Dkt. 6-1, at 17:13–14). Indeed, the Court finds it telling that the mother of Osuji's four children, who has known Osuji for over two decades, testified in this case regarding Osuji, "I'm sure whatever suits his agenda, he will say." (Deposition of Nkechi Osuji ("Nkechi Osuji Dep."), R. 19-12, at 10:2–3; *see also id.* at 7:7–21.)

the lack of records in this case. Indeed, the Bankruptcy Court carefully considered each of Appellant's asserted justifications and determined that none sounded like a reasonable justification for not having any bank statements or tax returns. (*See* MSJ Hr'g Tr., Dkt. 6-1, at 12:25–13:2 ("[W]hat about—again, bank statements, books and records of some kind, for this [import-and-export] business [in Nigeria] that would show what was going on[?]"), 14:7–9 ("I think the customer can get copies of the bank statements. So I think this—I'm not finding any adequate explanation."), 15:1–14 (rejecting Appellant's alleged neurological problems as a reasonable excuse for not providing financial records), 17:2–18:11 (considering Appellant's assertions that his house was flooded by Hurricane Sandy and his store was repossessed, and observing that Appellant nevertheless "could have gotten bank statements").) Based on a *de novo* review, the Court agrees that none of Appellant's stated justifications are reasonable. There are accordingly no genuine disputes of *material* fact, and Appellee Azie is entitled to judgment as a matter of law under § 727(a)(3). The Bankruptcy Court therefore properly granted summary judgment in Appellee's favor on this issue. *See Anderson*, 477 U.S. at 247–48; *Cacioli*, 463 F.3d at 235.

      **B.**      **Section 727(a)(5)**

Although the Court's determination that the Bankruptcy Court properly denied Appellant Osuji a discharge under § 727(a)(3) is sufficient to affirm, the Court concludes that the Bankruptcy Court also properly denied discharge under § 727(a)(5), and affirms on this basis as well. A denial of discharge under § 727(a)(5) is appropriate if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" 11 U.S.C. § 727(a)(5). The standard under § 727(a)(5) involves a similar two-step burden-shifting analysis as under § 727(a)(3): "first, the creditor must establish a loss or deficiency of assets," and second, "[i]f the creditor makes such a showing, the debtor has an opportunity to explain the whereabouts of the assets." *Cacioli*, 463 F.3d at 238

(internal citations omitted); *accord Agai v. Antoniou* (*In re Antoniou*), 527 B.R. 71, 84 (Bankr. E.D.N.Y. 2015). "As long as the debtor's explanation is convincing and not rebutted, there is no need for documentary corroboration." *Cacioli*, 463 F.3d at 238 (citation omitted). "The Court is not looking for a particularly praiseworthy explanation here; the debtor just has to indicate 'where the assets were spent.'" *Agai v. Mihalatos* (*In re Mihalatos*), 527 B.R. 55, 70 (Bankr. E.D.N.Y. 2015) (quoting *Doubet, LLC v. Palermo* (*In re Palermo*), 370 B.R. 599, 513 (Bankr. S.D.N.Y. 2007)).

Here, there is no dispute that there is a loss of assets, particularly the loss of the money Appellee Azie lent Appellant Osuji, and the Bankruptcy Court concluded that Osuji failed to provide a satisfactory explanation. (*See* MSJ Hr'g Tr., Dkt. 6-1, at 7:18–8:3; *see also id.* at 8:12–13 ("He has nothing to show for anything, other than two [personal] tax returns, which show zero.").) The Court agrees. Appellant appears to rely on substantially the same circumstances to explain his loss of assets as to justify his failure to provide records—namely, that his shipping business in Nigeria was destroyed by militant activity and that his Subway franchise store was repossessed and sold. (*See* MSJ Opp., R. 21, at PDF 13–14; *see also* Reply, Dkt. 10, at 1–2 (arguing that both §§ 727(a)(3) and (a)(5) "require analysis of the debtor's circumstances").) But a review of the record provides no indication that the assets at issue here—the money Azie lent Osuji—actually went to either of Appellant Osuji's two failed business ventures. In fact, Appellee Azie's check was made out to Osuji himself, not to any of his businesses, and the check was deposited in Osuji's personal checking account at Chase Bank. (341 Tr., R. 19-3, at 22:16–23:3.) In light of this undisputed fact, compounded by the lack of bank records or any other information regarding Appellant Osuji's business transactions, his naked assertions regarding the whereabouts of the assets at issue are unconvincing and insufficient. *See Ng v. Adler*, 518 B.R. 228, 244 (Bankr.

13

E.D.N.Y. 2014) ("While the debtor's explanation need not necessarily be meritorious, it must be a good faith explanation of what really happened to the assets in question. Vague and uncorroborated assertions . . . are insufficient." (alterations omitted) (internal citations omitted)); *cf. Cacioli*, 463 F.3d at 238 ("As long as the debtor's explanation is convincing and not rebutted, there is no need for documentary corroboration.").

In short, even viewing the facts in the light most favorable to Appellant and drawing all reasonable inferences in his favor, *see Burns*, 890 F.3d at 83, the Court cannot conclude that Appellant has satisfactorily explained the loss of his assets. The Bankruptcy Court accordingly did not err in granting summary judgment in favor of Appellee, and denying Appellant a discharge, under § 727(a)(5).

## CONCLUSION

For the reasons above, Appellant's appeal is denied, and the judgment of the Bankruptcy Court denying Appellant a discharge under 11 U.S.C. §§ 727(a)(3) and (a)(5) is affirmed. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 16, 2021
      Brooklyn, New York